UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ethan NELSON,<br><br>                       Plaintiff,<br><br>v.<br><br>GUARDIAN TOWING, INC., et al.,<br><br>                       Defendants. | Case No.: 22-cv-0306-AGS-BLM<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT (ECF 27)** |

While deployed overseas with the military, plaintiff learned that—back home—his beloved pickup truck had been towed away. After the towing company later sold the truck to defray its storage costs, plaintiff sued. The defense moves for summary judgment.

## BACKGROUND[1]

Plaintiff Ethan Nelson's "great-grandfather" bought a "1999 Toyota Tacoma" truck that has since "been in the family for as long as [Nelson] can remember." (ECF 33-2, at 37–38, 67–68.) In 2016, the truck passed to Nelson as a high school "graduation gift." (*Id.* at 37–38.) Although the vehicle is two decades old, it has "sentimental value," as Nelson has nothing else "to really remember [his] great-grandpa by now." (*Id.* at 142.)

By 2021, Nelson was an active-duty U.S. Marine stationed at Marine Corps Air Station Miramar, when he "received orders to deploy to Okinawa, Japan." (ECF 33, at 8.) Just before that deployment, he parked his truck "in the parking lot of the MCAS Miramar post exchange." (*Id.* at 8–9.) Nelson "arranged for a friend to later move" his truck, but

---

[1] Plaintiff's "best evidence rule" objections are overruled. At "the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). Even if a document "violated the best evidence rule," it does "not preclude the district court from granting summary judgment," as the document itself "does not have to be in a form that would be admissible at trial." *See Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992).

1

that friend "failed" to do so. (*Id.* at 9.) Predictably, "MCAS Miramar authorities" eventually requested that the truck be towed. (*Id*.)

Enter defendant Ali Ganji, the "owner and operator" of defendant Guardian Towing, Inc. (ECF 33, at 7, 9.) Ganji "transported [the truck] to Guardian's impound lot." (*Id.* at 10.) Later, the truck was "sold via lien sale," much to Nelson's dismay. (*Id*. at 12.)

A key dispute in this case is what defendants knew at the time of sale, particularly about Nelson's military status. The defense pleads ignorance. They explain that Guardian Towing "utilizes the services of a company called LienTek Solutions, Inc.," which transmits a vehicle's "identification number to the California Department of Motor Vehicles." (*Id.* at 10–11.) They believed that if "a vehicle is registered to a member of the armed services," the DMV will "report this information to LienTek, and LienTek will in turn" notify defendants. (*Id.* at 11.) Defendants followed that process here, but LienTek "gave no indication" the truck was owned by a servicemember. (*Id.* at 11–12.)

On the other hand, Ganji was the one who towed the truck off a military base. (ECF 33, at 10.) And several weeks before the sale, Ganji handwrote a note in the file stating that the truck's registered owner "called. He's deployed." (ECF 33-2, at 230–31.)

Based on the loss of his truck, Nelson sued Ganji and Guardian Towing under the federal Servicemembers Civil Relief Act and California's Military and Veterans Code, Rosenthal Act, and Unfair Competition Law, as well as for negligence and intentional infliction of emotional distress. (ECF 1, at 8–10.) Defendants move for summary judgment on most of these claims, as well as on Nelson's requests for punitive and emotional-distress damages. (*See* ECF 27-1.)

## DISCUSSION

Summary judgment is proper when the record, taken in the light most favorable to the nonmoving party, demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

When the "nonmoving party will bear the burden of proof at trial," the party urging summary judgment shoulders the initial burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). This may be accomplished by "'showing'—that is, pointing out through argument—the absence of evidence." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the nonmoving party to "go beyond the pleadings and identify facts which show a genuine issue for trial." *Id.* at 531.

## A.     Ganji's Individual Liability

Defendants move for summary judgment on all claims against Ganji. They assume "plaintiff is attempting to hold Mr. Ganji liable for the actions of Guardian on an alter ego theory" without any "identification evidence to support" such a theory. (ECF 27-1, at 10–12.) But plaintiff Nelson denies making "that argument." (ECF 33-1, at 9.) Rather, he insists that "Ganji is actually the person, the employee, the owner and operator of Guardian, who took and approved of *all* actions to confiscate and sell Plaintiff's vehicle without a court order." (*Id.*)

Plaintiff stands on much firmer ground. Under both California and federal law, the rule is well settled: "Directors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct." *Wyatt v. Union Mortgage Co*., 598 P.2d 45, 52 (Cal. 1970); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." (quotation marks omitted)).

It is undisputed that Ganji "remove[d] the subject pickup truck from MCAS Miramar," "transport[ed] it to Guardian's impound lot," and "made the decision to sell

3

[plaintiff's] car." (ECF 33, at 10–11; ECF 33-2, at 222.) Because Ganji participated in the allegedly tortious conduct, he may be subject to personal liability. His summary-judgment argument to the contrary is denied.

## B.     Rosenthal Act

California's Rosenthal Fair Debt Collection Practices Act applies only to "consumer credit transactions." *Traylor v. Wyndham Resort Dev. Corp.*, No. CV 16-7670 PSG (AJWx), 2017 WL 5172240, at *3 (C.D. Cal. May 2, 2017) (citing Cal. Civ. Code § 1788.2 (b), (c), (e), (f)). Defendants argue there "was never any transaction between plaintiff and defendant whereby defendant agreed to provide plaintiff with something on credit." (ECF 27-1, at 22.) Nelson responds that he "owed Defendants money for the storage of his vehicle," so "the storage was a service provided to [Nelson] on credit," establishing a consumer credit transaction. (ECF 33-1, at 14.) But merely owing money does not establish the sort of "transaction" needed for liability. The Rosenthal Act focuses on debts incurred from "'*consensual* transactions' for consumer goods or services." *Vartanian v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-08358-ODW, 2013 WL 877863, at *6 (C.D. Cal. Mar. 7, 2013) (emphasis added). Defendants towed, kept, and sold Nelson's truck without his consent. As none of these were consensual transactions, defendants are entitled to summary judgment on the Rosenthal Act claim.

## C.     Unfair Competition Law

California's Unfair Competition Law provides for two forms of remedy. The primary one is an injunction on "unfair competition," while the other, "restitution," "is merely ancillary." *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 900 (Ct. App. 2015) (quotation marks omitted); *see* Cal. Bus. & Prof. Code § 17203. Before the UCL authorizes either form of equitable relief, however, plaintiffs must lack "an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Defendants argue that Nelson fails this requirement and thus seek summary judgment on the UCL claim.

In response, Nelson points out that his truck's "sentimental value" is "more than any amount of money could cover because I have nothing to really remember my great-grandpa

by now." (ECF 33-2, at 142.) He contends that "the best way to make" him "whole" is by "restitution—[1] returning the truck . . . , and [2] paying a monetary amount for Plaintiff's actual damages, including emotional distress." (ECF 33-1, at 15.) As a threshold matter, the legal issue turns not on whether restitution is the "best" remedy, but whether it (or, preferably, injunctive relief) is the *only* adequate remedy.

With that in mind, let's break down plaintiff's proposed remedy to its constituent parts: First, the truck's return. That remedy is impossible for this Court to order, as a third party "now has title" to the vehicle, and Nelson "has alleged no UCL violation against [the new owner]." *See Morris v. JPMorgan Chase Bank, N.A.*, 293 Cal. Rptr. 3d 417, 458 (Ct. App. 2022) (unpublished); *see also In re National Mass Media Telecomm. Sys., Inc.*, 152 F.3d 1178, 1181 (9th Cir. 1998) (explaining that, when the "only remedy" demanded is a return of property, but "a non-party now owns that property," courts are "powerless" to grant relief). In other words, this Court has no authority to compel the truck's purchaser, who is not before it, to sell. Alternatively, Nelson imagines that this "Court could order Defendants to go find the purchaser of [Nelson]'s truck, buy it back, and return it" to him. (ECF 33-1, at 15.) Even if this Court had that power, which is doubtful, it would not be inclined to micromanage those negotiations or—worse yet—order defendant to pay any price the purchaser demands.

The remainder of Nelson's proposed remedy—a "monetary amount" for "actual damages, including emotional distress"—sounds in law, not equity. The restitutionary remedy available under the UCL is intended "to make whole, equitably, the victim of an unfair practice." *Day v. AT & T Corp.*, 74 Cal. Rptr. 2d 55, 64 (Ct. App. 1998). The first component of Nelson's actual damages is the value of his vehicle. This he may obtain under his SCRA cause of action—an "adequate remedy at law" that precludes him from "securing equitable restitution for past harm under the UCL." *Sonner*, 971 F.3d at 844. As for the other component, "an award of money damages to compensate for . . . emotional distress . . . constitutes a legal remedy." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017). It is thus not available under the UCL.

In short, Nelson has not shown that he is entitled to a UCL injunction or restitution, let alone that his remedies at law are insufficient. The defense's summary-judgment motion is therefore granted on the UCL claim.

### D.  Intentional Infliction of Emotional Distress

To prove the tort of intentional infliction of emotional distress, plaintiffs must show, among other things, that the defendant's "extreme and outrageous" conduct (1) was "directed primarily at them" and "was calculated to cause them severe emotional distress" or (2) "was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury." *Christensen v. Superior Ct.*, 820 P.2d 181, 204 (Cal. 1991). No one contends that any relevant conduct occurred "in the presence of" Nelson, as he was deployed overseas at the time, so only the former theory is in play. Defendants say their conduct was not "directed primarily at" Nelson, so his claim fails.

Nelson argues that the defendants' conduct was directed at him because they "sold his truck without a court order," which led to his "emotional distress," as he "had a sentimental attachment to the truck." (ECF 33-1, at 16.) But even if defendants had been "substantially certain" the truck sale would cause "extreme emotional distress," that would not satisfy the stringent standard for conduct "directed primarily at" plaintiff. *See Christensen*, 820 P.2d at 202. For example, the plaintiffs in *Christensen* plausibly alleged that the defendants' "mishandling of [their relatives'] remains . . . was intentional, was outrageous, and was substantially certain to cause extreme emotional distress to relatives and close friends of the deceased." *Id*. at 201–02. The California Supreme Court held that this was "not enough" for an intentional-infliction claim, as the allegations fell short of establishing that "defendant's misconduct was directed to and was intended to cause severe or extreme emotional distress to a particular individual." *Id*. at 202, 204.

Nelson's facts are even weaker than those in *Christensen*. The *Christensen* defendants were of course aware that "mutilating" human remains was "substantially certain to cause extreme emotional distress" to someone. 820 P.2d at 186, 201–02. By contrast, Nelson has not pointed to any evidence that defendants even *knew* that Nelson

6

In short, Nelson has not shown that he is entitled to a UCL injunction or restitution, let alone that his remedies at law are insufficient. The defense's summary-judgment motion is therefore granted on the UCL claim.

### D.  Intentional Infliction of Emotional Distress

To prove the tort of intentional infliction of emotional distress, plaintiffs must show, among other things, that the defendant's "extreme and outrageous" conduct (1) was "directed primarily at them" and "was calculated to cause them severe emotional distress" or (2) "was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury." *Christensen v. Superior Ct.*, 820 P.2d 181, 204 (Cal. 1991). No one contends that any relevant conduct occurred "in the presence of" Nelson, as he was deployed overseas at the time, so only the former theory is in play. Defendants say their conduct was not "directed primarily at" Nelson, so his claim fails.

Nelson argues that the defendants' conduct was directed at him because they "sold his truck without a court order," which led to his "emotional distress," as he "had a sentimental attachment to the truck." (ECF 33-1, at 16.) But even if defendants had been "substantially certain" the truck sale would cause "extreme emotional distress," that would not satisfy the stringent standard for conduct "directed primarily at" plaintiff. *See Christensen*, 820 P.2d at 202. For example, the plaintiffs in *Christensen* plausibly alleged that the defendants' "mishandling of [their relatives'] remains . . . was intentional, was outrageous, and was substantially certain to cause extreme emotional distress to relatives and close friends of the deceased." *Id*. at 201–02. The California Supreme Court held that this was "not enough" for an intentional-infliction claim, as the allegations fell short of establishing that "defendant's misconduct was directed to and was intended to cause severe or extreme emotional distress to a particular individual." *Id*. at 202, 204.

Nelson's facts are even weaker than those in *Christensen*. The *Christensen* defendants were of course aware that "mutilating" human remains was "substantially certain to cause extreme emotional distress" to someone. 820 P.2d at 186, 201–02. By contrast, Nelson has not pointed to any evidence that defendants even *knew* that Nelson

had a strong sentimental attachment to his truck such that the sale would cause any similarly extreme distress. (*See* ECF 1, at 6–7, 10.) Nor has Nelson identified any evidence to support a claim that the defense "intended" to cause him severe emotional distress.

"The summary-judgment stage is the 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas v. Carson*, No. 20-cv-2044-AGS-BGS, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024). Nelson has come forward with no admissible evidence that raises a triable issue about any outrageous defense conduct that was "directed primarily at" him nor that was "calculated to cause" him "severe emotional distress." *See Christensen*, 820 P.2d at 204. Thus, his intentional-infliction claim fails.

### E. Emotional-Distress Damages

Defendants seek summary judgment on Nelson's request for emotional-distress damages on the three remaining claims: negligence, the Servicemembers Civil Relief Act, and the state Military and Veterans Code.

#### 1. *Negligence*

In general, plaintiffs "may not recover emotional distress damages for a towed vehicle" in a negligence case. *Ingram v. City & Cnty. of San Francisco*, No. A110540, 2005 WL 3445569, at *2 (Cal. Ct. App. Dec. 15, 2005) (citing *Cooper v. Superior Ct.*, 200 Cal. Rptr. 746, 748 (Ct. App. 1984)). For negligence actions, California courts have only awarded emotional-distress damages "arising solely out of property damage" after a "threshold showing of some preexisting relationship." *Cooper*, 200 Cal. Rptr. At 748; *see Windeler v. Scheers Jewelers*, 88 Cal. Rptr. 39, 43 (Ct. App. 1970) (affirming emotional-distress damages for the negligent loss of "old family rings" that were "cherished mementos of [plaintiff's] husband" because the parties had a contractual "bailment" relationship).

Nelson has not shown that required relationship here. He instead advances two arguments to dodge the sweep of the foregoing caselaw. First, he stresses that this action involves "selling (*not damaging*)" property, which sets it apart from the "property damage"

precedents. (ECF 33-1, at 11.) That distinction seems irrelevant to the analysis. Nelson's injury arises from the deprivation of his property; the mode of disposal makes no difference. For example, in *Gonzales v. Personal Storage, Inc.*, 65 Cal. Rptr. 2d 473 (Ct. App. 1997), the court held that a self-storage facility's negligence in the loss of plaintiff's "keepsakes, heirlooms and other personal belongings" could not justify "damages for emotional distress." *Id*. at 475, 479. Nelson tries to distinguish *Gonzales* by noting that, "in this instance," "there was a *duty* . . . not to sell his truck without a court order." (ECF 33-1, at 11 (emphasis added).) Yet *Gonzales* involved a similar legal "duty to protect [plaintiff]'s property," and the court nonetheless concluded that this obligation "did not include a duty to protect [plaintiff] from emotional distress." *Id*. at 479. So it is here.

Nelson's final rejoinder is that emotional-distress damages are "inherently a question of fact to be determined by a jury" and thus "improper for a motion for summary judgment." (ECF 33-1, at 11.) Not so. "Although the amount of recoverable damages is usually a question of fact," the "existence of damages . . . is a question of law." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014). Nelson cannot recover emotional-distress damages for negligence here.

### 2. *Servicemembers Civil Relief Act*

Defendants' arguments against emotional-distress damages under the Servicemembers Civil Relief Act are less persuasive. First, they believe that every court to consider "the recoverability of emotional distress damages in a private right of action under the SCRA has rejected recovery of such damages." (ECF 27-1, at 18.) But that is not so. *See Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 479 (6th Cir. 2016) (referencing a court-approved SCRA class-action settlement that provided "$35,000 for emotional distress"). At any rate, the number of courts that have rejected emotional-distress damages is less important than their rationale for doing so. Were the facts insufficient to justify such damages? Or did the courts say that those damages were always legally foreclosed?

Defendants suggest that at least a couple cases imply that such damages are unavailable in SCRA actions. Yet both cases were focused on a discrete SCRA provision that effectively amended a contract between the parties, so the courts held that available remedies were limited to those recoverable on a "breach of contract" claim. *See Banaszak v. CitiMortgage, Inc.*, No. 13-CV-13710, 2014 WL 4489497, at *5 (E.D. Mich. Sept. 10, 2014) ("[D]amages for emotional distress cannot be recovered in an action for breach of contract."); *Newton v. Bank of McKenney*, No. 3:11CV493-JAG, 2012 WL 1752407, at *8–9 (E.D. Va. May 16, 2012) (same). By contrast, Nelson's SCRA claim arises under a different provision about "[e]nforcement of storage liens," not a contract breach, and is grounds for a separate cause of action. *See* 50 U.S.C. § 3958; *see also id.* § 4042 (providing a civil private right of action for "[a]ny person aggrieved by a violation of this chapter").

Finally, defendants urge the Court to "hold that forum state law . . . applies to plaintiff's SCRA cause of action," which they think would preclude emotional-distress damages. (ECF 27-1, at 18–19.) As defendants point out, if a federal statutory scheme leaves matters "unaddressed," courts presume they are "subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994). But Congress did not leave the matter of damages unaddressed in the SCRA. That law authorizes an aggrieved party to "obtain any appropriate equitable or declaratory relief" and "recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042(a). Notwithstanding the defense's preference for state law, the Court must use federal law to interpret whether the critical term "appropriate relief" includes emotional-distress damages. After all, "[f]ederal law, not state law, governs [the] interpretation of federal statutes." *United States v. Diaz*, 838 F.3d 968, 972 (9th Cir. 2016). And defendants do not argue that emotional-distress damages are otherwise unavailable under federal law.

Perhaps there are winning legal arguments to preclude emotional-distress damages under the SCRA here, but the defense has not raised them. Thus, defendants have not carried their burden of establishing that they are entitled to judgment as a matter of law on this point.

9

### 3. *Military and Veterans Code*

Under California's Military and Veterans Code, defendants may be liable for exercising "any right to foreclose or enforce any lien on the property or personal effects of a service member, including liens for storage" "during that person's period of military service." Cal. Mil. & Vet. Code § 409.1(b). Any violations entitle plaintiffs to "actual damages," among other relief. *Id*. § 409.1(c). Relying on a case about common-law negligence, defendants argue that California law renders plaintiff "incapable of recovering emotional distress damages in connection" with this claim. (ECF 27-1, at 17.) But the damages here are authorized by statute, not common law. And in California, "the term actual damages includes damages for emotional distress." *McNairy v. C.K. Realty*, 59 Cal. Rptr. 3d 429, 433 (Ct. App. 2007); *see also id.* (collecting cases from California and elsewhere interpreting "actual damages" to "include damages for mental distress"); *Cavka v. SoulCycle Inc.*, No. 8:16-cv-01821-JLS-KES, 2017 WL 2906034, at *4 (C.D. Cal. Jan. 30, 2017) ("California's state courts have construed the term 'actual damages' to ordinarily . . . include damages for mental suffering." (cleaned up)). Defendants do not explain why this Court should deviate from California's normal practice. So, they are not entitled to summary judgment regarding emotional-distress damages on this claim.

### F. Punitive Damages

Nelson seeks punitive damages both for his federal Servicemembers Civil Relief Act claim and for his state claims. (ECF 1, at 11-12.) Defendants state that Nelson is "incapable of showing an entitlement to an award of punitive damages" because "there is fundamentally no allegation defendants intended to *harm* plaintiff or violate any statutory duty." (ECF 27-1, at 19–20.)

#### 1. *SCRA—Punitive Damages*

"Punitive damages" are "available for [a] willful and wanton violation of the SCRA." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 837 F. Supp. 2d 581, 587 (E.D. Va. 2011); *see also Ensley v. Gene's Wrecker Serv., Inc.*, No. 3:16cv713-MCR-CJK, 2019 WL 1063392, at *1 (N.D. Fla. Feb. 4, 2019), *report and recommendation adopted*,

No. 3:16cv713-MCR-HTC, 2019 WL 1059689 (N.D. Fla. Mar. 6, 2019); *Durm v. American Honda Fin. Corp.*, No. CIV. WDQ-13-0223, 2013 WL 6490309, at *7 n.25 (D. Md. Dec. 9, 2013) (same). "The key fact at issue with respect to punitive damages under the SCRA is whether defendant knew plaintiff's vehicle belonged to a servicemember when it put the vehicle up for auction and then sold the vehicle to a third party." *Ensley*, 2019 WL 1063392, at *1 (cleaned up).

A reasonable jury could conclude that Ganji knew Nelson was a servicemember at the time of sale. First, Ganji personally towed the truck off a military base. (ECF 33-2, at 235.) Also, he had a long-distance phone conversation with Nelson two weeks before selling Nelson's truck. Specifically, on August 2, 2021, Ganji handwrote this note to his file: "RO called. He's deployed. He tried to give power of attorney to a friend." (ECF 33-2, at 230.) Ganji testified that "RO" stood for "Registered owner," meaning "Ethan Nelson." (*Id.* at 230–31.) Despite this note, Ganji swore that he still "did not know" whether Nelson was in the military. (*Id.* at 235.) Based on all this circumstantial evidence, however, a reasonable jury could disagree. That is, at least by the time the lien cleared on "August 16, 2021," a reasonable jury could infer Ganji was aware that Nelson was a servicemember deployed overseas. (*See id.* at 240.) As there's a reasonable dispute over Ganji's knowledge of Nelson's military status, the case must proceed to trial to determine whether punitive damages on the SCRA claim are merited.

### 2. *State Claims—Punitive Damages*

The analysis—and result—is different under California's punitive-damages section. Nelson argues that defendants "have engaged in despicable conduct," "intentionally ignor[ing] the rights" of "every servicemember." (ECF 33-1, at 17.) For California claims "not involving" a "contract," plaintiffs can recover punitive damages, that is, "damages for the sake of example and by way of punishing the defendant."[2] Cal. Civ. Code § 3294(a).

---

[2] Because Nelson doesn't meet the standard for them in any event, the Court need not decide whether punitive damages under California Civil Code § 3294 are typically

To do so, plaintiffs must show, "by clear and convincing evidence," that defendant is "guilty of oppression, fraud or malice." Cal. Civ. Code § 3294(a). So, "summary judgment" on "the issue of punitive damages is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." *Butte Fire Cases*, 235 Cal. Rptr. 3d 228, 235 (Ct. App. 2018), *as modified on denial of reh'g* (July 26, 2018); *see also Johnson Indus. Sales, Inc. v. Strema Sales Corp.*, 224 F. App'x 709, 711 (9th Cir. 2007) (affirming summary judgment because the evidence did "not reach [Cal. Civ. Code § 3294's] heightened level of burden of proof of clear and convincing evidence of an intent to 'cause injury' to the plaintiff or of 'despicable conduct'").

Plaintiff's "despicable conduct" argument might fit under the requirement to show either malice or oppression. "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "Oppression means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*. § 3294(c)(2). Under both definitions, "the adjective 'despicable' is a powerful term" that denies punitive damages "absent an intent to injure the plaintiff." *Butte Fire Cases*, 235 Cal. Rptr. 3d at 237. A "'willful and conscious' disregard of the plaintiffs' interests" is not enough. *Id*.

Nelson's proof is thus deficient, as it suggests nothing more than "willful and conscious disregard." As set out above, there is evidence in the record to support the conclusion that defendants knew that Nelson was a deployed servicemember yet sold the truck anyway. Even so, Nelson points to no additional evidence to suggest Ganji sold the truck because he was motivated by an "intent to injure" Nelson. *See Butte Fire Cases*,

---

available for a Military and Veterans Code § 409.1 claim. *See Carpenter v. Forest Meadows Owners Assn.*, No. 1:09-CV-01918-JLT, 2011 WL 3207778, at *18 (E.D. Cal. July 27, 2011) (suggesting that "§ 409.1" might be limited to "actual damages, reasonable attorney's fees, and costs" because, unlike another part of the Military and Veterans Code, that section doesn't say the available remedies are "in addition to" other legal ones).

235 Cal. Rptr. 3d at 237. The closest Nelson comes is stating: "Defendant admitted that it didn't even attempt to determine whether Plaintiff was an active duty military member." (ECF 33-1, at 17.) But even "reckless disregard" is not "enough to sustain an award of punitive damages" under California Civil Code § 3294. *See Butte Fire Cases*, 235 Cal. Rptr. 3d at 236. Without more, a reasonable jury could not make the necessary findings to section 3294's exacting clear-and-convincing standard. Thus, summary judgment is granted on punitive-damages requests arising from Nelson's state-law claims.

G.   **Nelson's Summary-Judgment Request**

In his opposition brief, Nelson seeks summary judgment on his SCRA and MVC claims. (ECF 33-1, at 13.) But the deadline for filing summary-judgment motions expired over a month before Nelson submitted his opposition papers. (*See* ECF 10, at 3.) "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quotation marks omitted). That motion is summarily denied.

## CONCLUSION

Thus, the Court **GRANTS** summary judgment for the defense on:

1. Rosenthal Fair Debt Collection Practices Act (claim 3).
2. Unfair Competition Law (claim 4).
3. Intentional infliction of emotional distress (claim 6).
4. Emotional-distress damages for the negligence claim.
5. Punitive damages on the remaining state claims only.

Defendants' motion is otherwise **DENIED**.

Dated:  March 30, 2024

Hon. Andrew G. Schopler
United States District Judge